PEARSON, Chief Judge.
The appellant, Philip Napoleon, was the defendant below. Final judgment in an action for malicious prosecution was entered against him pursuant to an adverse jury verdict.
Since the only issue on appeal is whether the trial court erred in denying Napoleon’s motion for directed verdict at the close of the evidence, the record must be viewed in the light most favorable to the verdict. So viewed the record shows the following situation. The plaintiff-appel-lee, David Glass, was the owner of a “Concession Lease” for the parking of cars at Napoleon’s night club. Disputes arose between Glass and Napoleon as to the manner in' which the parking concession was being operated. Acting on the advice of his lawyer, who was also interested in the night club operation, Napoleon told Glass not to come to work on the night of March 18, 1966. Glass arrived and insisted upon performing the regular work of parking the cars. Napoleon then called his lawyer. After the lawyer arrived he and Napoleon remonstrated with the appellee, directing him to leave the premises. The appellee refused to leave. When threatened with arrest Glass replied that he was going to stay until he was arrested. Thereafter Napoleon swore out a warrant for Glass’s arrest on the charge of violating the trespassing ordinance of North Bay Village. A policeman then came to the night club and took Glass to the station. He was booked and released in about one hour. When Glass was tried in municipal court the judge acquitted him on the ground that he was justified in staying on the premises because he did not understand the nature of his rights.
The controlling question is whether on the facts as above stated Napoleon had probable cause to have Glass arrested for trespassing after Glass refused to leave Napoleon’s premises.
Although the parking concession agreement was called a “Concession Lease” *885 and provided for the payment of “rent”, the document unquestionably created a licensor-licensee relationship rather than a landlord-tenant relationship. The real property in question belonged to the corporation Napoleon controlled. Glass had no possessory interest in that property. He had only a contract right to carry out the duties of a parking concessionaire. The relationship between the parties was clearly akin to a master-servant relationship created by a contract of employment[1]. Glass’s continued refusal to leave the premises was wrongful under the admitted facts. Napoleon as a matter of law had probable cause for the trespass charges he filed. See § 821.01, Fla.Stat. (1967), F.S.A.; cf. Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).
Glass urges that the judgment ought to be affirmed because one may noir employ criminal process to determine the rights of parties to a contract. Glass contends that Napoleon had him arrested in order to determine the rights of the parties under the concession contract. While we agree with the foregoing rule, we do not agree that it is applicable to this case. The record is devoid of any evidence that Napoleon wished to have the contractual rights of the parties determined.
Glass also urges, in effect, that if one has an alternative between civil remedies for a wrongful act and criminal process, one must utilize civil remedies or be guilty of malicious prosecution. Glass cites no authority in support of his position. However there is authority for the contradictory of that position. See cases cited at 54 C.J.S. Malicious Prosecution § 42b, note 63.
We conclude that in order to maintain an orderly society in which business relationships may be developed, it is necessary that the right to the control of a business should not be held in abeyance while civil litigation is undertaken. In the present case the nightclub business belonged to Napoleon. In order for him to operate it properly, he needed an employee willing to function under his direction. Therefore it is in the interest of public policy that a clear distinction be made between the rights of a contract-employee and the right to the control of the property involved.
Having reached the conclusion that a directed verdict in Napoleon’s favor should have been granted at the conclusion of all the evidence, we reverse the judgment appealed from.
Reversed and remanded with directions to enter a directed verdict and a final judgment for the defendant-appellant.

. The following dialogue between Glass ' and his trial counsel on direct examination indicates the relationship of the parties:
“Q Did you commence working for Mr. Napoleon after he took over the club?
A Yes, I did.
Q Do you remember when you started working for him?
A Opening night, after Napoleon took over the club, was February 24, I think. * * *
Q You continued to work for him up to tiie night of the arrest?
A Yes.”